Good morning. May it please the court. Jennifer Wiedekind for Plaintiff Appellant Christopher Henson. I will be reserving three minutes for rebuttal. We'll try to remind you, but keep an eye on the clock. Will do. Thank you. I would like to start by briefly addressing the questions from the court. As a preliminary matter, the district court's initial order denying Mr. Henson's preliminary injunction request is not before this court, and intervening events make its rationale no longer applicable. The clock isn't running, but our courtroom deputy is keeping track of the time, so unfortunately he won't... Looks like maybe we can... Okay, so... We'll just pause for a moment and see if we can get that to... Run. Okay, now it's running. All right, so now we're all on the same page. Please go ahead. Thank you, Your Honor. As I was saying, the district court's initial order denying Mr. Henson's preliminary injunction request is not before this court, and intervening events make its rationale no longer applicable. The defendants in this case conceded this in their briefing and waived any related argument. Following its initial order, the district court granted Mr. Henson's motion to file a second amended complaint, which added a claim specific to COVID-19 conditions and saw it released as a remedy. That second amended complaint was the operative complaint at the time the district court issued its decision on reconsideration and is the operative complaint today. The district court seemingly recognized, therefore, that specific radiation oncology no longer applied and narrowed its ruling on reconsideration, denying Mr. Henson's motion solely on the grounds that release was not an available remedy under Section 1983. Counsel, when you say that the judge's order was not part of the record, don't we recognize the district court docket as being part of the record on appeal? Yes, Your Honor, and I didn't mean to say it was not part of the record, but the decision that is on appeal today is the district court's subsequent decision on reconsideration where it narrowed its determination and denied Mr. Henson's motion solely on the grounds that release is not an available remedy in a civil rights action. Counsel, I'd like to address that rationale. Why isn't that the right answer? It seems to me that if someone is seeking immediate release, which is what your client is seeking, that that is habeas only relief and is not available in another context. And we are permitted to affirm on any ground that is in the record what's wrong with that reasoning. Yes, Your Honor. Well, I'll note that the questions about the scope of habeas itself are not before this court, and the court need not decide those questions to decide this case. Rather, binding precedent provides that release is an available remedy in a civil rights action, and courts have long ordered release as a remedy to cure constitutional violations. In Brown v. Plata, the Supreme Court held that release of state prisoners was an available remedy when necessary to cure constitutional violations. And that decision was 5-4, but I'll note that the justices were unanimous in determining that release is an available remedy. But Brown was quite different in that there, you know, the issue was overcrowding, right? And the court said, you have to get capacity down, or you have to get the numbers down to some percentage of capacity within a certain period of time, which, in principle, if the state could have built prisons fast enough, they wouldn't have to release anyone. And, you know, because that was impractical, they were going to have to release some people, but they had total discretion as to who to release. I mean, it seems quite different to say that the court can enter an order saying, you, the plaintiff, must now be released, which is what you're seeking. And I don't know of any case where a court has done that under 1983. Is there an example of that? Yes, there are. And I want to note initially, though, that nothing in the language of Brown limited its decision to cases involving capacity or overcrowding. And Justice Scalia, in his dissent, where he was joined by Justice Thomas, specifically envisioned a scenario where the release of an individual prisoner would be appropriate. There, Justice Scalia discussed a scenario in which a prisoner may not be able to receive the medical care required at the prison and determined in that situation release would be appropriate. Now, to your question about cases authorizing individual-level releases, I'd point you to Reeves out of the District of Massachusetts, which I think is a particularly instructive case here. There, the plaintiff was a quadriplegic who required a level of medical care that the district court found the prison was not willing or able to provide. And so the district court therefore ordered that Mr. Reeves be moved to a non-Department of Corrections medical facility where he could receive the care that he needed. And I'd like to also note that this court has actually addressed releases in a context not related to overcrowding. In Roman v. Wolfe, this court addressed the situation we have here, the serious risk of harm presented by COVID-19 to people who are incarcerated. And the court broadly affirmed a district court's authority to enter release as a remedy in a civil rights action if necessary to cure constitutional violations. Although there, too, it wasn't release of anyone in particular. What's odd about this is what he's claiming is I'm at risk of getting COVID in prison. Addressing that doesn't really require him to be released. If they released everyone else from the prison but kept him, he would no longer face the risk of getting COVID from the other inmates. So it just seems to be a mismatch between the remedy that you're seeking and your theory of what the harm is. Well, Your Honor, Mr. Henson, of course, only has standing to seek his own release here. And, in fact, seeking that as a remedy is looking for a much more tailored remedy than we saw in these other cases where he is asking the court to specifically address the harm to him, the risk of harm to him, by allowing him to be released from the facility and to take proactive measures to then protect himself from COVID-19, measures that he is unable to take while incarcerated. And what do you say? I mean, there's a number of cases. I'm thinking of Wilkinson against Dawson in particular is an example of the line of cases from the Supreme Court telling us about how to distinguish between 1983 actions and hideous actions. And there they said pretty explicitly, I'm quoting, a 1983 action will not lie when a state prisoner challenges the fact or duration of his confinement and seeks immediate release from prison. That's exactly what you're seeking here, isn't it? Mr. Henson is seeking release from prison, but he is not challenging his conviction or his sentence. And that is what the court is looking at when it's speaking to hideous relief. Here he is challenging the conditions of confinement, and that is why it is appropriately brought under Section 1983, just as these other cases like Brown v. Plato, which was a case brought under Section 1983. I don't know if there's an answer to this in the record, but I mean, one thing that's odd about this case is that the request for the injunction was, I believe, in May of 2020, or that's when the district court's order is from. And a lot of things have happened relating to the COVID situation since then. So the first question is, has Mr. Henson been vaccinated or been offered the vaccine? Yes, well, that's not in the record. As you noted, Mr. Henson moved for his preliminary injunction back in April of 2020 when vaccines weren't even on the horizon. Now, with that in mind, it is my understanding that he has since received the vaccine. But that's one of the things that counsels toward a remand in this case. The district court, at the time, made no findings of fact on the record, made no findings about the risk of harm to Mr. Henson or the actions that the Department of Corrections was and was not taking. And so remand is appropriate to allow the district court to reconsider Mr. Henson's motion using the proper legal standard and then to make those necessary findings of fact on the record and to determine the appropriate remedy. Counsel, you said that the appeal was from the denial of reconsideration. On what do you base that? I'm looking at what I see in the record as the notice of appeal, and I can't tell that that's really so. Yes, Your Honor. Well, I'll note that Mr. Henson was proceeding pro se before the district court, and he did not specify the docket number in his notice of appeal. However, just simply chronologically, he filed that notice of appeal after the district court's decision on its motion for reconsideration. And so construing his pleadings liberally, as we must, since he was pro se, I think it is fair to say that he was appealing that subsequent determination. Now, I'd like to note that the defendants in this case have suggested that assuming release is an available remedy, there should be artificial constraints placed on a court's equitable authority to order releases. Specifically, that release should only be available in cases of overcrowding. or where other remedies have first been attempted. But there is no authority to support these constraints. First, with respect to limiting releases to overcrowding situations, we touched on this briefly before. But as noted, there is no authority to support that restriction, and the defendants point to none. On the other hand, in Roman v. Wolfe, which was not an overcrowding case, this court broadly affirmed that district courts have the authority to order releases when necessary to remedy constitutional violations. Suppose you had a case for somebody who was sentenced to life without parole as a juvenile. And that was a long time ago, right? So now he's really old. And he comes in and he says, I have this letter from the parole board that they say they would give me parole if they were allowed to, but they're not. And, of course, we now know that it is unconstitutional in violation of the Eighth Amendment to hold someone for life based on a juvenile conviction without parole eligibility. So he says, my continued confinement in prison is a violation of the Eighth Amendment. I'm bringing this action under 1983, seeking an injunction that I be released. Is he entitled to that relief? Your Honor, not hypothetical. He is actually challenging his conviction. He says, I'm not really worried about the conviction. I just want to be let out. It violates the Eighth Amendment to continue to hold me. Well, Your Honor, I think because he is not challenging the conditions of his confinement, which is what we have here and what is appropriately brought under Section 1983, that particular situation may be more appropriately brought in habeas. And I see I'm running low on my time, so I would like to reserve the remainder for rebuttal unless the court has any additional questions. Okay, you can reserve the time. And we'll hear from Ms. Barnes now. Good morning, Your Honors. May it please the Court, my name is Rebecca Baines and I represent Director David Shin. I think this Court and Judge Graber's question specifically recognize what the issue is that is actually before this Court. And that is whether Mr. Henson's immediate release from prison is an available remedy for the claims that he's brought. And to make it clear, it is Dr. Shin's position that no, his immediate release from prison is not an available remedy under a 1983 action. Rather, Mr. Henson or any other inmate's release from prison in a 1983 action can only be granted within the confines of the Prison Litigation Reform Act and the parameters set forth there for what factors must be met before a court can order release from prison. So I have a question for you about state procedure. In the federal system, there is the opportunity to file a motion for a compassionate release. Is there any similar procedure under state law? And if there is, is that relevant in any way to our analysis? Your Honor, I do want to apologize that I can't answer that question today in front of you. I can't say for certain, and I don't want to speculate as to whether that motion would be available or such a release would be available to Mr. Henson. If this court wishes, we can provide supplemental information on that. But just given what has occurred in this case, so Mr. Henson had his First Amendment complaint. That was what was before this court when he filed his motion for preliminary injunction. And in that motion, he sought his immediate release from prison. The court rightfully concluded that that immediate release from prison is not cognizable in a 1983 action. And the cases that Mr. Henson has cited and his counsel discussed today actually illustrate this position. So looking first at the Brown v. Plata case, the overcrowding case that arose from the Ninth Circuit and eventually went to the Supreme Court, there you saw that there was years of litigation, and it had been found that there were constitutional violations that were caused by overcrowding and its attendant issues. And that other remedies short of release had not cured the problems. Therefore, at that point, it was appropriate to order population reductions. This is what the statutory authority requires, that release can only be offered when it is the only remedy that will cure the violation. And as with any other preliminary or prospective relief, it is the most narrowly tailored release available. That was cited in the Brown case and also mentioned in our briefing as well in the discussion of the Brown case. Looking also at the Roman case that Mr. Henson has relied on, that case is distinguishable for several key reasons. Most notably is because there that was brought by a class of plaintiffs, again, not an individual, and also that it was a class of federal immigration detainees. And this is important because they are not inmates or otherwise prisoners under the PLRA. So that did not apply to that case. So therefore, the court had a little bit broader authority to grant relief and, if appropriate, on remand. In that case, release would be one of those. But here, in this context of a state prison system in which federal courts are traditionally and correctly hesitant to get involved in and to direct how prisons should operate, basically release can only be granted once certain factors have been met, and those have simply not been met here. And so Roman case should not be construed as precedent for allowing release in any sort of COVID-related claim. And also, as far as whether any of the cases supported individual prisoners, immediate release of prison, again, none of the cases that have been cited do support that proposition. And the Reeves case, which did involve a quadriplegic inmate, again, there had been years of history in that case and where it was documented and even found that the Department of Corrections there was unwilling and unable to provide Mr. Reeves with the care that he needed. So at that point, when other remedies had failed, his release was appropriate. So just given what was present in this case and given that Mr. Henson has made clear that his only release thought was his immediate release from prison, that simply was unavailable to him. And as this court has noted, he filed his most preliminary injunction quite some time ago when things have significantly changed. And when the court granted his motion relief to amend and to file his second amended complaint, at that point on he was free to litigate his COVID-related claim, and he still remains free to do so today. As I understand the record, the release date for Mr. Henson is very soon approaching. Is that still true? Yes, Ron, to my knowledge, that is still correct. I believe it is late April, based on the public information. I may also update this court with what is in the record before the district court. There has been a motion filed below that is also pending that would possibly address this issue. But again, there was no reason and no authority for the court to grant Mr. Henson's motion for a preliminary injunction. And I can turn now to the questions that were posed by this court in its order setting oral argument. And also, as was noted, Mr. Henson didn't, there's no basis for concluding that Mr. Henson only appealed from the denial of his motion for reconsideration. His notice of appeal just said that he is appealing from the denial of his TRO and the injunction. And so when the court denied the motion for a preliminary injunction in the first instance, what it had before, it did not include a claim related to COVID-19. And under the rationale set forth in the Pacific Radiations case, where there was no relationship between the claims related to COVID that were related to the motion for preliminary injunction and the misconduct complaint within the underlying complaint, there was no authority and no basis for the court to even entertain that motion for preliminary injunction. When it was faced with the motion for reconsideration and the motion for leave to amend, at that point, the court did not include all of the grounds that it denied the motion for preliminary injunction in the first instance. I just reiterated its earlier finding that immediate release from prison is not recognizable under 1983, but it did grant Mr. Henson leave to amend his complaint to add the COVID-related claim. And at that point, again, Mr. Henson was free to litigate that claim to file another motion for preliminary injunction or to otherwise do as he saw fit. And he remains free to do so today. I believe Mr. Henson, he noted in his briefing, he recognized that what he is seeking is an extraordinary remedy from this court. But immediate release from prison is simply not available in a 1983 action. Again, it must be, it really is a remedy of last resort when no other relief will cure the violation, which Mr. Henson did not allege until his reply briefing on appeal. And it must be the least intrusive means necessary to remedy that violation. The district court was just not presented, even if it was able to entertain the motion for preliminary injunction, and did not have any grounds to grant his relief. So I'm happy to answer further questions from this court, but otherwise Director Shin would ask this court to affirm. Looks like there are no further questions. So thank you, Ms. Baines. And I apologize, it said Barnes on the day sheet. That's okay. Ms. Wedekind, you have just under two minutes. Thank you, Your Honor. I would like to briefly address the suggestion that release should only be available if other remedies have first been tried and failed. Again, there is no support authority that supports that restriction. Rather, courts must be allowed to consider release on a case-by-case basis just as they do for any other type of relief. And this is where the winter factors are helpful in considering what remedy is necessary. But here, the district court cut short its analysis because it made an error of law at the outset and then did not continue to make the findings of fact on the record that are required and did not consider those winter factors. But again, that is why remand is most appropriate here. We can send the case back to the district court to reconsider Mr. Henson's motion applying the correct legal standard and allow it to make those findings of fact on the record and apply the winter factors to determine the most appropriate remedy. And with my remaining time, I would like to also make clear that the PLRA provisions that Ms. Baines referred to, which are found at 18 U.S.C. section 3626A.3, those provisions do not apply here. They only apply in contexts in which crowding has been found to be the primary cause of the constitutional violation. And of course, that is not the situation here. So with that, I would like to ask this court to reverse the district court's determination, hold that release is an available remedy in a civil rights action, and remand for further proceedings. Thank you, counsel. And we note that you're representing Mr. Henson pro bono, and we appreciate your service to the court. We thank both counsel for their helpful arguments this morning and the cases submitted. Thank you, Your Honor. Thank you.
judges: GRABER, MILLER, Fitzwater